IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

YINZCAM, INC.,

      Plaintiff,

v.

STRATEGIC SPORTS, INC.,

      Defendant.

14cv1364
**ELECTRONICALLY FILED**

### Memorandum Opinion on Plaintiff's "Partial" Motion for Summary Judgment

**I.**   **Introduction**

This is a breach of contract action. The parties' dispute is based upon a Services Agreement (a "Promotional Agency Services" or "Services Agreement") whereby Yinzcam, Inc. ("Yinzcam") contracted with Strategic Sports Inc. ("Strategic") for marketing and agency services related to Yinzcam's sports related applications.[1] Yinzcam alleges that Strategic failed to meet its obligations under the Agreement and, on September 19, 2014, filed a three (3) count Complaint in state court alleging breach of contract, unjust enrichment, and a claim for declaratory relief that Strategic maintains no equity interest in Yinzcam. More specifically, Yinzcam alleges that Strategic breached the Agreement by failing: to provide contacts that yielded any opportunities for Yinzcam to further its business; to provide any agreement with any sponsors or other third parties; to produce a needs analysis, a corporate sponsor development program, a pricing plan and a monthly strategic plan; and to follow the confidentiality obligations. On October 29, 2014, Strategic filed its first Answer, New Matter and included two

---

[1] The parties agree that the service agreement is governed by Pennsylvania law and that it is a valid integrated contract. This case was originally brought in the Court of Common Pleas of Allegheny County and was properly removed on the basis of diversity of citizenship.

1

(2) Counterclaims alleging: (1) breach of contract by Plaintiff by terminating it prior to the expiration of its initial term and by refusing to recognize Defendant's alleged equity interest in Plaintiff; and, (2) that it is entitled to a declaration that it owed an equity interest in Plaintiff. Plaintiff has filed a Motion for "Partial" Summary Judgment arguing that because Strategic became aware on July 19, 2010, or September 20, 2010 (at the latest) that it was terminating the Services Agreement and had rejected any claim of equity (and therefore had notice of this alleged breach), and yet failed to file its Answer, New Matter and Counterclaim until October 29, 2014, said Counterclaims are outside the applicable four (4) year statute of limitations for a breach of contract action. This Court agrees, finding that Defendant's Counterclaims fail as a matter of law, and therefore, Plaintiff's Motion for "Partial" Summary Judgment on Defendant's Counterclaims ([doc. no. 40](doc. no. 40)) will be GRANTED.

## II. **Standard of Review**

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir. 1994). Disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – i.e., depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed.R.Civ.P. 56(c)(1).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). *Id.*

In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc*., 54 F.3d 1125, 1127 (3d Cir. 1995).

### III.     Factual Background

Unless otherwise noted, the following material facts are not in dispute and have been gleaned from Plaintiff's concise statement of material facts ([doc. no. 41](doc. no. 41)), and Defendant's response thereto ([doc. no. 50](doc. no. 50)).

#### A.     Yinzcam and Strategic Were Bound by a Services Agreement

Yinzcam and Strategic are parties to a written Services Agreement dated November 19, 2009, that is governed by Pennsylvania Law. The term of the Services Agreement was two (2) years. The Services Agreement is an integrated contract that states as follows:

3

> XIII. Entire Agreement
>
> This Agreement, including all addendums, attachments or exhibits attached hereto, sets forth the entire understanding between the parties with respect to the subject matter hereof and supersedes all prior proposals, oral or written, all previous negotiations and all other communications with respect to the subject matter hereof. This Agreement shall not be amended or modified in any manner except by an instrument signed by the authorized representatives of both parties.

[Doc. No. 42-8 at p 12](). Stern Dep. Ex. 5.

The Services Agreement provided for compensation in the form of both commissions and equity in lieu of any retainer fees or other billable fees. With regard to the alleged "grant" of equity, Article IIA2 provides:

> 2. Equity Grants
>
> a. Upon completion of a mutually acceptable business valuation. Yinz shall grant to Agency an equity interest equal to 5% of the voting shares of Yinz (the "Initial Equity.") The grant of the Initial Equity shall be conditioned upon and subject to the terms and conditions of the applicable Shareholder Agreement, which shall include (among other things) provision for the redemption of such equity interest upon termination and/or the expiration of this Agreement.

[Doc. No. 42-8 at p. 7](). Stern Dep. Ex. 5.

The parties failed to complete a mutually acceptable business valuation, although the Services Agreement contains no time limitation within which the parties were to secure a valuation. The parties also did not execute a Shareholder Agreement. Strategic was represented by counsel in connection with the negotiation, execution and termination of the Services Agreement.

## B. Yinzcam's "Termination" of the Services Agreement

On June 15, 2010, Yinzcam[2] sent an email to Strategic re: "current thoughts." The text of email conveyed that Yinzcam was disappointed in Strategic's failure to generate any revenue in the first seven months after signing the Service Agreement and that Strategic appeared likely to fail to reach its own self-imposed revenue targets.[3] Yinzcam gave Strategic the opportunity to close on existing prospective deal(s), which would "serve to restore [Yinzcam's] faith in Strategic's performance and capabilities." Peter Stern (who is the founder, president, sole shareholder, sole officer and designated Rule 30(b)(6) witness of Strategic) viewed this letter as a signal that he was being "pushed out" of the "day to day operations." Doc. No. 42-7 at p. 8; Stern Dep. Testimony at p. 40.

On July 19, 2010, Yinzcam sent an email to Strategic (which Stern does not specifically recall receiving but is familiar with) re: "final thoughts," that stated:

> I think the termination of our relationship is the best solution for us, and the one that will give us the most peace of mind. We're moving forward immediately to ask David Franklin to proceed with termination. Please do not continue to represent Yinzcam, either to teams or to sponsors. Thank you for your time. I wish you the very best in all your endeavors. Priya.

Doc. No. 42-8 at p. 15; Stern Dep. Ex. 10.

On July 19, 2010, Strategic replied to Yinzcam's email confirming that the email "clearly expresses [Yinzcam's] interest and intent to terminate our agreement prior to the initial term,"

---

[2] Unless otherwise noted, emails that were sent on behalf of Yinzcam were typically sent by Priya Narasihman, President of Yinzcam, and emails that were sent on behalf of Strategic were typically sent by Peter Stern, designated Rule 30(b)(6) witness and sole shareholder. Rather than referring to the email authors by name, the Court will refer to them by reference to the party.

[3] Yinzcam referred to Strategic as a shareholder or equity owner of Yinzcam on June 15, 2010 ("That will serve to restore our faith in Strategic's performance, as well as actually contribute to the company of which you own a generous part."), Stern Dep. Ex. 6, and on June 23, 2010 ("You hold 'significant' equity in a company and you continue to gain in value through my efforts regardless of us gaining nothing through yours.")

5

and indicating that Strategic would "await [attorney] David Franklin's suggestions as to how you recommend that we proceed with a premature termination," asserting that "any termination agreement has to be mutually acceptable." Doc. No. 42-7 at p 18; Stern Dep. at pp. 91-92.

Then, on September 8, 2010 Strategic contacted Yinzcam by email re: line "Next Steps" in further response to Yinzcam's July 19, 2010 "Final Thoughts" email, confirming that Strategic had ceased to represent Yinzcam, as instructed, and reported that Strategic had not yet heard from Attorney Franklin. On September 15, 2010 Strategic contacted Yinzcam by reply emailed entitled "re: Next Steps" to state, "I am looking to close the loop with you on the David Franklin dialog . . ." Doc. No. 42-8 at pp. 24-25; Stern Dep. Ex. 13. On September 16, 2015, Strategic contacted Yinzcam by reply email entitled "re: Next Steps" to ask Yinzcam to confirm that it was "aligned" with the assertion that Strategic has equity in Yinzcam. Doc. No. 42-8 at p. 26.

Critically, on September 20, 2010, Attorney Franklin sent Strategic an email attaching a letter terminating the parties' Services Agreement. The termination letter recites the inability of Strategic to fulfill its commitments under the agreement, the formal notice of alleged material nonperformance given on June 15, 2010, and the failure of Strategic to cure its nonperformance after written notice. Strategic argues that none of the grounds stated by Plaintiff in the email of June 15, 2010 or the letter of September 20, 2010 are set forth in the Services Agreement as grounds for termination.[4] Nonetheless, the September 20, 2010 letter states as follows:

> Therefore, please accept this correspondence as our formal notice of termination, effective immediately. Pursuant to the Agreement, Yinzcam shall retain ownership of all Work Product. Further, STRATEGIC shall immediately cease and refrain from using all Yinzcam proprietary information and all Yinz Cam trademarks and trade names.

---

[4]Although not dispositive of the current Motion for Partial Summary Judgment, Strategic argues that it provided "substantial services to Plaintiff, introducing Plaintiff to the National Football League, most of the NFL teams and teams from the National Hockey League, the National Basketball Association and Major League Baseball teams, in addition to several sponsors." Doc. No. 51 at pp. 52-56; Affidavit of Peter Stern.

6

> **Lastly, it is my understanding that you have recently made assertions to Yinz Cam that you own an equity interest in the company. However, this is not the case**. The grant of any equity interest to you was subject to satisfaction of certain conditions as set forth in the Agreement. None of these conditions have occurred.

Doc. No. 42-8 at p. 28-29; Stern Dep. Ex. 15-16. (Emphasis added).

On September 20, 2010, 10 minutes after receiving the above email notice of termination, Strategic acknowledged receipt by reply email to Attorney Franklin, advising that Strategic's "legal folks will contact you regarding our interest in Yinzcam." Doc. No. 42-8 at p 30; Stern Dep. Ex. 17. At 4:35 p.m. on September 20, 2010, Strategic sent a second email to Attorney Franklin attaching a further response to the "proposed formal notice of termination." Importantly, Strategic states that it construed the written notice of termination, "to both terminate the Agreement and rescind STRATEGIC's equity interest in Yinzcam." Doc. No. 42-8 at p. 32 Strategic also stated in conclusion, "Please let me know if we are going to be able to resolve this matter. It is my most sincere hope we can avoid the prospects of costly and time-consuming litigation. I await your reply." Doc. No. 42-8 at pp. 32-33; Stern Dep. Ex. 18-19.

On September 21, 2010, Strategic sent Yinzcam another email to inquire how Yinzcam intended to "message our relationship status," and to request a time to "meet and work to amicably resolve our differences." Stern Dep. Ex. 20. Strategic knew, at least "in general" that it had recourse to litigation any dispute with Yinzcam. Strategic did, however, make a demand that the parties secure a valuation and that Strategic be provided with the appropriate shareholders' agreement. Doc. No. 51 at 80.

7

C. **Commencement of Legal Process**

On November 9, 2010 Yinzcam commenced a lawsuit against Strategic in the Court of Common Pleas of Allegheny County, Pennsylvania. On November 17, 2010 Yinzcam served Strategic by United States Certified Mail with a Writ of Summons in the state court lawsuit, and Strategic acknowledges that it received Yinzcam's legal process on November 17, 2010 and that it understood those papers to notify it that it had been sued in Court by Yinzcam. Doc. No. 42-7 at pp. 29-31; Stern Dep at pp. 133-134, 139, 142-43.

Then, on September 19, 2014, Yinzcam filed and served its Complaint against Strategic in state court. After Strategic removed this case from state court, it then filed its Answer, New Matter and Counterclaim on October 29, 2014. The filing of the Answer, New Matter and Counterclaim was the first time Strategic filed its alleged claims against Yinzcam in Court.[5]

The Answer, New Matter and Counterclaim were admittedly filed more than four (4) years after September 20, 2010, the date on which Yinzcam terminated the parties Services Agreement, notified Strategic that it did not own an equity interest in Yinzcam, and on which Strategic acknowledged notice of termination, protested that act, demanded resolution of its alleged equity interest, notified Yinzcam that it would be contacted by Strategic's lawyers, and expressed its 'most sincere hope' that litigation could be avoided. Doc. No. 42-8 at pp. 32-33; Stern Dep. Ex. 18, 19; *see also* Doc. No. 51 at p.80.

---

[5] Strategic filed an Amended Answer, New Matter and Counterclaim on December 5, 2014. Doc. No. 24.

## IV. Discussion

### A. Strategic's Breach of Contract Counterclaim Fails as a Matter of Law

In order to sustain a cause of action for breach of contract, a party must establish: 1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Siematic Mobelwerk GMbH & Co. KG v. Siematic Corp.*, 643 F.Supp.2d 675 (E.D. Pa. 2009), *citing Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. 2000).

The statute of limitations for a breach of contract action (and related claims for declaratory judgment) brought under Pennsylvania law is four (4) years. 42 Pa.C.S § 5525(8); *Equip. Fin., LLC v. Hutchinson*, 487 Fed. Appx. 25, 27 (3d Cir. 2012). Generally, the statute of limitations does not run against a cause of action that is based on a contract that is continuing, and it begins to run only from the time when the breach occurs or the ***contract is in some way terminated***. *S.T. Hudson Engineers, Inc. v. Camden Hotel Development Associates,* 747 A.2d 931 (Pa. Super. 2000); *Van Sciver v. Van Sciver*, 12 A.2d 108 (Pa. 1940); *Crouse v. Cyclops Industries*, 704 A.2d 1090 (Pa. Super. Ct. 1997), *aff'd in part, rev'd in part on other grounds*, 745 A.2d 606 (Pa. 2000); *Cole v. Lawrence*, 701 A.2d 987 (Pa. Super. 1997) (emphasis added). The statute of limitations begins to run when "all of the elements of the claim exist," or "when a significant event takes place that makes a legal suit possible." *Wiseman Oil Co. v. TIG Ins. Co.*, 878 F.Supp. 2d 597, 603 (W.D. Pa. 2012). Here, in its Amended Answer, New Matter and Counterclaim, Strategic alleged that Yinzcam breached the Services Agreement by terminating it prior to the expiration of its initial term (doc. no. 24 at ¶ 102-03) and by refusing to recognize Strategic's alleged equity interest in Yinzcam (doc. no. 24 at ¶ 104).

9

There is no dispute that Yinzcam gave notice in the email correspondence of July 19, 2010, that it was terminating the agreement, and in the letter of September 20, 2015, most critically, that it did not recognize Strategic's alleged equity interest in Yinzcam. Accordingly, these alleged breaches occurred not later than September 20, 2010, or as early as July 19, 2010. Despite having notice of the alleged "material" breach by Yinzcam in July or, at the outside, September 20, 2010, Strategic did not advance its original Counterclaims until October 29, 2014 ([doc. no. 12](doc. no. 12)), which is outside the four (4) statute of limitations period for breach of contract claims under Pennsylvania law.

Although Strategic argues that facts are in dispute which preclude a summary judgment ruling on the issue of the statute of limitations, the facts on this issue (about whether there was notice of breach) are not genuinely in dispute. Rather, Strategic argues that there could be no cause of action until Yinzcam advanced its claim against Strategic. The Court disagrees, as the law is well settled that the statute of limitations begins to run on a claim from the time the cause of action accrues. *S.T. Hudson Engineer*, 747 A.2d at 933, *citing Packer Society Hill Travel Agency, Inc. v. Presbyterian University of Pennsylvania Medical Center*, 635 A.2d 649 (Pa. Super. 1993)). "In general, an action based on contract accrues at the time of breach. When the contract is continuing, the statute of limitations runs from the time when the breach occurs or when the contract is in some way terminated." *Id. citing Thorpe v. Schoenbrun*, 195 A.2d 870, 872 (Pa. Super. 1963).[6] The Court does not find that either November 17, 2010 (the date on which the writ of summons was served) or September 22, 2014 (the date on which Strategic

---

[6] In support of Strategic's position that the cause of action did not accrue until actual damages have been sustained, Strategic cites a lone case from the United States District Court from the Eastern District of Pennsylvania, *Boerger v. Levin*, 812 F.Supp. 564, 566 n.4 (E.D. Pa. 1993). The *Boerger* case is inapplicable to the present case because it involves a claim for legal malpractice which is factually distinguishable from the current scenario as there are no damages and therefore no right to sue until a plaintiff in a legal malpractice case suffers a loss that is enforceable against him.

learned that Yinzcam was taking legal action to terminate Strategic's alleged equity interest), are dispositive or connected to establishing breach. Instead, Strategic had unequivocal notice of the breach by no later than September 20, 2010. For these reasons, Strategic's breach of contract Counterclaim fails as a matter of law.

      **B.**    <u>**Strategic's Claim for Declaratory Judgment Fails as a Matter of Law**</u>

The parties agree that the statute of limitations for an equitable remedy in the form of a declaratory judgment runs simultaneously with the statute of limitations for the underlying claim (breach of contract). *See Algrant v. Evergreen Valley Nurseries Ltd. Pshp.*, 1226 F.3d 178, 184-85 (3d Cir. 1997). Having determined that Strategic's Counterclaim for breach of contract was filed outside of the applicable statute of limitations, the same result holds true for the declaratory judgment action.

      **C.**    <u>**Strategic's Affirmative Defenses Remain Viable**</u>

In Yinzcam's Reply to the Motion for Summary Judgment, it acknowledges that "Strategic may attempt to prove *facts* constituting its defenses, it is not permitted to, and need not, litigate untimely legal *claims* that allegedly arise from those facts. Plaintiff's Motion seeks only to dismiss Strategic's requests for affirmative relief." Doc. No. 57 at p. 5. (Emphasis in original). While the Court will permit Strategic to assert its affirmative defenses, it will not allow Strategic to proceed with its own independent legal claims thus entitling Strategic to potential monetary relief (See Doc. No. 24 at pp. 13-22)(as to Count I, "Wherefore, Strategic requests judgment in an amount in excess of $75,000 exclusive of interests and costs and such other remedy as the Court deems appropriate"); (as to Count II, "Wherefore, Strategic requests this Honorable Court to declare that Strategic is and has been a five (5) percent equity owner of Yinz and direct Yinz to take such action as is necessary to enter Strategic on the records of the

company as such, issue such stock certificates as necessary to evidence such ownership and prohibit the taking of any action by Yinz in derogation of Strategic's equity interest in Yinz.")

## V.     Conclusion

For these reasons, and after viewing the facts in the light most favorable to Strategic, as the non-moving party, the Court finds that Strategic's Counterclaims fail as a matter of law. Accordingly, this Court will grant Yinzcam's Motion for "Partial" Summary Judgment ([doc. no. 40](doc. no. 40)).

An appropriate Order follows.

**SO ORDERED** this 19th day of May, 2015.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:  All Registered ECF Counsel and Parties